1

2

3

4

5

6

7

8            UNITED STATES DISTRICT COURT

9            SOUTHERN DISTRICT OF CALIFORNIA

10

11   KENYATTA QUINN MITCHELL       )   Case No. 13cv480-WQH (DHB)
                                    )
12              Petitioner,         )   **REPORT AND**
                                    )   **RECOMMENDATION OF**
13   v.                             )   **UNITED STATES MAGISTRATE**
                                    )   **JUDGE REGARDING PETITION**
14   WARDEN PADRIX, et al.,         )   **FOR WRIT OF HABEAS**
                                    )   **CORPUS**
15              Respondents         )
                                    )
16   _____       )

17          On May 8, 2013, Petitioner Kenyatta Quinn Mitchell ("Petitioner"), a state prisoner

18   proceeding *pro se*, filed a First Amended Petition for Writ of Habeas Corpus. (ECF No.

19   13.[1]) Petitioner seeks relief from his January 27, 2011 conviction and his 5 year sentence

20   for carrying a concealed dirk or dagger. Petitioner alleges four grounds for relief: (1) the

21   statute of conviction, California Penal Code § 12020 violates the Second Amendment; (2)

22   his sentence is cruel and unusual in violation of the Eighth Amendment; (3) the jury was

23   improperly instructed on the elements of the offense; and (4) he was not properly informed

24   about his rights relating to his prior convictions. Respondent filed an Answer opposing any

25   habeas relief (ECF No. 15), and Petitioner filed a Traverse. (ECF No. 24.) The Court has

26   reviewed the parties' pleadings, the record, and controlling law, and for the reasons

27

28          [1] Page numbers for docketed materials cited in this Report and Recommendation refer to those
     imprinted by the Court's electronic case filing (ECF) system.

discussed below, hereby **RECOMMENDS** that the Petition be **DENIED**.

## I.     BACKGROUND

### A.     Factual Background

The following facts are taken from the partially published California Court of Appeal Opinion in *People v. Mitchell*, 209 Cal.App.4th 1364 (Cal. Ct. App. 2012).  (Lodgment No. 15.)  The Court presumes these factual determinations are correct pursuant to 28 U.S.C.A. §2254(e)(1).   *See Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003) (finding factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary).

At about 9:00 a.m. on September 28, 2010, trolley security officer Francisco Valenzuela removed Mitchell from the trolley because Mitchell did not have a ticket to ride the trolley.  Mitchell sat down on a bench at the trolley station while Valenzuela contacted a code compliance officer to issue a citation.  Another security officer (Alex Colon) stood behind Mitchell to provide cover.  When Mitchell leaned forward on the bench, Colon noticed the silver tip of what appeared to be a knife sticking out of the bottom of Mitchell's sweatshirt.  The knife was not visible before Mitchell leaned forward.

Colon signaled to Valenzuela to alert him about the knife, and in response Valenzuela asked Mitchell to stand up and put his hands behind his back.  Mitchell complied, and Valenzuela handcuffed him.  Valenzuela advised Mitchell that he would be conducting a pat-down search for weapons, and asked if Mitchell had anything that would "poke" him.  Mitchell denied that he had anything of this nature.  During the pat-down, Valenzuela felt or saw the tip of the knife, and when he raised Mitchell's sweatshirt he observed the remainder of the knife.  The knife was in between Mitchell's belt and trousers.  Its total length was about 11 inches, and it had a five-inch-long, fixed blade.  Mitchell told the security officers that he carried the knife for self-defense.  The police were summoned and Mitchell was arrested.

At trial, Mitchell elected to represent himself and testified on his own behalf.  On direct examination, Mitchell stated that he was going fishing that day and he uses the knife as a fishing tool.  He claimed he was not intentionally trying to hide the knife, and he forgot that he had it.  He also testified that he tried to be compliant with the security officer because he did not want to inflame the situation and he "was trying to go about [his] business and hopefully get to work on time that day."

On cross-examination, Mitchell testified that before he left for the trolley that morning he placed the knife between his belt and pants, and he was going to the harbor to fish with a friend who had fishing equipment.  Although he was now claiming that he had the knife for fishing purposes, he acknowledged that he did not have a fishing pole with him when he was stopped and he told the security officer that he had the knife for self-defense.

(Lodgment No. 15 at 2-4.)

/ / /

### B.     Procedural Background

On November 1, 2010, Petitioner was charged in a single count information with carrying a concealed dirk or dagger, in violation of California Penal Code § 12020(a)(4).[2] (Lodgment No. 1 at 1-2.)   The information also alleged Petitioner had various prior convictions. (*Id.* at 2-3.)   On January 27, 2011, a jury convicted Petitioner of carrying a concealed dirk or dagger. (*Id.* at 78.)   Thereafter, Petitioner admitted the prior convictions. (Lodgment No. 6 at 117-119.)   On February 28, 2011, Petitioner was sentenced to state prison for a term of 5 years. (Lodgment No. 1 at 119.)

Petitioner appealed his conviction. (Lodgment No. 1 at 97; Lodgment No. 7.)   His direct appeal raised four issues: (1) California Penal Code § 12020 violates the Constitution on its face and as applied to Petitioner; (2) the trial court failed to properly instruct the jury regarding the required criminal intent; (3) the trial court did not properly advise Petitioner of his rights relating to his prior convictions; and (4) the trial court abused its discretion in imposting a $1,000 restitution fine. (Lodgment No.7.)   On August 28, 2012, the Court of Appeal affirmed the conviction in part, and reversed in part. (Lodgment No. 10.)  The Court of Appeal initially found the record did not show Petitioner had been advised of, or that he understood, his right to a jury trial on his prior strike allegations. (*Id.* at 22-29.)   Therefore, the court remanded the case for redetermination on the priors and for resentencing. (*Id.* at 33.)   After the opinion was filed, the Superior Court informed the Court of Appeal that a portion of the transcript and the court's minutes from January 26, 2012 had been omitted from the initial appellate record. (Lodgment No. 11.)   The omitted documents showed that full advisals had been given to Petitioner. (*Id.*)   Based on the new information, the Court of Appeal granted rehearing, augmented the record, and gave the parties an opportunity to file supplemental letter briefs. (Lodgment No. 12.)   On October 11, 2012, the Court of Appeal issued an Opinion after Rehearing, affirming Petitioner's conviction. (Lodgment No. 15.) Petitioner filed a Petition for Review in the California Supreme Court. (Lodgment No. 16.)

---

[2] Petitioner was charged and convicted under the 2010 version of California Penal Code §12020. In 2012, § 12020 was renumbered with no substantive changes.  Section 12020 (a)(4) is now § 21310. For purposes of this Report and Recommendation, the Court will refer to the 2010 version of the statute.

1    On January 23, 2013, the California Supreme Court summarily denied review. (Lodgment

2    No. 17.)

3          On February 27, 2013, Petitioner timely filed his federal Petition for Writ of Habeas

4    Corpus.  (ECF No. 1.)  On March 20, 2013, the Court dismissed the Petition without

5    prejudice and with leave to amend because Petitioner failed to name a proper respondent.

6    (ECF No. 5.)  On May 8, 2013, Petitioner filed his First Amended Petition for Writ of

7    Habeas Corpus.  (ECF No. 13.)  On July 11, 2013, Respondent filed an Answer.  (ECF No.

8    15.)  Petitioner filed his Traverse on August 26, 2013.  (ECF No. 24.)

9    **II.    DISCUSSION**

10          **A.    Legal Standard**

11          A federal court "shall entertain an application for a writ of habeas corpus in behalf of

12   a person in custody pursuant to the judgment of a State court only on the ground he is in

13   custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C.

14   § 2254(a).  The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") controls

15   review of this Petition.   *See Lindh v. Murphy*, 521 U.S. 320 (1997).  Under AEDPA, a

16   habeas petition will not be granted with respect to any claim adjudicated on the merits by the

17   state court unless that adjudication: (1) resulted in a decision that was contrary to, or

18   involved an unreasonable application of clearly established federal law; or (2) resulted in a

19   decision that was based on an unreasonable determination of the facts in light of the evidence

20   presented at the state court proceeding. 28 U.S.C. § 2254(d)(1) and (2); *Early v. Packer*, 537

21   U.S. 3, 8 (2002).  In deciding a state prisoner's habeas petition, a federal court is not called

22   upon to decide whether it agrees with the state court's determination; rather, the court applies

23   an extraordinarily deferential review, inquiring only whether the state court's decision was

24   objectively unreasonable. *Yarborough v. Gentry*, 540 U.S. 1, 4 (2003); *Medina v. Hornung*,

25   386 F.3d 872, 877 (9th Cir. 2004).

26          A federal habeas court may grant relief under the "contrary to" clause if the state court

27   applied a rule different from the governing law set forth in United States Supreme Court

28   cases, or if it decided a case differently than the Supreme Court on a set of materially

indistinguishable facts. *Bell v. Cone*, 535 U.S. 685, 694 (2002). A federal court may grant relief under the "unreasonable application" clause if the state court correctly identified the governing legal principle from Supreme Court decisions, but unreasonably applied those decisions to the facts of a particular case. *Id.* Additionally, the "unreasonable application" clause requires that the state court decision be more than incorrect or erroneous; to warrant habeas relief, the state court's application of clearly established federal law must be "objectively unreasonable." *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003).

"Clearly established federal law" means the law as determined by the United States Supreme Court. 28 U.S.C. § 2254(d)(1). Circuit precedent may be pertinent to the extent it illuminates the meaning and application of Supreme Court precedent, but "[o]nly Supreme Court precedents are binding on state courts under AEDPA." *Campbell v. Rice*, 408 F.3d 1166, 1170 (9th Cir. 2005). "[W]hen a Supreme Court decision does not 'squarely address[] the issue . . . it cannot be said, under AEDPA, there is 'clearly established' Supreme Court precedent addressing the issue," and the federal court "must defer to the state court's decision." *Moses v. Payne*, 555 F.3d 742, 754 (9th Cir. 2009). S*ee also Carey v. Musladin*, 549 U.S. 70, 77 (2006) (the lack of holdings from the Supreme Court on the issue presented precludes relief under 28 U.S.C. § 2254(d)(1)).

In applying 28 U.S.C. § 2254(d)(2), federal habeas courts must defer to reasonable factual determinations made by the state courts, to which a statutory presumption of correctness attaches. 28 U.S.C. § 2254(e)(1); *see Schriro v. Landrigan*, 550 U.S. 465, 473-74 (2007). To determine whether habeas relief is available under § 2254(d), the Court "looks through" to the last reasoned state court decision as the basis for its analysis. *Ylst v. Nunnemaker*, 501 U.S. 797, 801-8-3 (1991). If the dispositive state court order does not "furnish a basis for its reasoning," federal habeas courts must conduct an independent review of the record to determine whether the state court's decision is contrary to, or an unreasonable application of, clearly established Supreme Court law. *See Delgado v. Lewis*, 223 F.3d 976, 982 (9th Cir. 2000), *overruled on other grounds by Andrade*, 538 U.S. at 75-76; *accord Himes v. Thompson*, 336 F.3d 848, 853 (9th Cir. 2003).

**B.     Evidentiary Hearing**

As an initial matter, the Court finds that Petitioner has not made any argument that further factual development is necessary, such that an evidentiary hearing would be warranted. *See* 28 U.S.C. § 2254(e)(2) (listing exceptions where evidentiary hearing may be appropriate). Therefore, the Court finds an evidentiary hearing is not necessary because the Petition can be resolved by reference to the record. *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007).

**C.     Claim One: California Penal Code § 12020 is Unconstitutional**

Petitioner's first claim is that California Penal Code § 12020 violates the Second Amendment because it burdens his right to bear arms in self defense. (ECF No. 13 at 6; ECF No. 24 at 1.) Respondent counters that the state courts reasonably rejected Petitioner's Second Amendment challenge to § 12020. (ECF No. 17 at 10-13.) For the reasons set forth below, the Court agrees with Respondent.

Petitioner presented this claim to the California Supreme Court, and it was denied without comment. (Lodgment Nos. 16 and 17.) The Court will therefore look through the silent denial to the last reasoned decision, which is the Court of Appeal's October 11, 2012 opinion. *Ylst*, 501 U.S. at 804. On appeal, Petitioner argued §12020 violated his right to bear arms in self-defense under the Second Amendment, as interpreted by the United States Supreme Court in *District of Columbia v. Heller*, 554 U.S. 570 (2008). The Court of Appeal rejected Petitioner's argument. With regard to Petitioner's claim that the statute was unconstitutional on its face, the Court of Appeal stated:

> Consistent with the historical interpretation permitting prohibitions on the carrying of concealed weapons, we find no facial unconstitutionality in the statute proscribing the carrying of a concealed dirk or dagger.
> . . .
>
> When evaluating the constitutionality of a statute, the courts have developed several levels of scrutiny (i.e., strict, intermediate, and rational-basis), depending on the nature of the right affected by the statute and the manner in which the right is impacted. (See *Heller*, *supra*, 554 U.S. at p. 628, 128 S.Ct. 2783.) We reject Mitchell's contention that the constitutionality of the concealed-carrying statute should be evaluated under the strict scrutiny test, and conclude the proper test is intermediate scrutiny.[FN4] "Strict scrutiny does not apply automatically any time an enumerated [constitutional] right is involved." (*United States v. Marzzarella* (3d Cir. 2010) 614 F.3d 85, 96

(*Marzzarella*).)  In *Marzzarella*, the court concluded that intermediate scrutiny should be applied because the statute under review regulated the manner of possession of a weapon, but did not completely ban the possession of the weapon.  (*Id.* at p. 97; accord *People v. Ellison* (2011) 196 Cal.App.4th 1342, 1347, 128 Cal.Rptr.3d 245.)  The dirk or dagger concealed-carrying restriction does not entirely prohibit the carrying of a sharp instrument for self-defense; rather, it limits the manner of exercising that right by proscribing concealed carrying of a dirk or dagger unless the bearer uses a visible knife sheath or nonswitchblade folding or pocketknife.  Because the statute regulates but does not completely ban the carrying of a sharp instrument, we subject it to intermediate scrutiny.

> FN4.  *Heller* rejected application of the rational-basis test to Second Amendment infringement issues, but left open whether strict or intermediate scrutiny should be applied.  (*Heller*, *supra*, 554 U.S. at pp. 628 & fn. 27, 634, 128 S.Ct. 2783.)

Under the intermediate scrutiny test, the statute must serve an important governmental interest and there should be a reasonable fit between the regulation and the governmental objective.  (*Marzzarella*, *supra*, 614 F.3d at pp. 97-98.)  The regulation need not be the least restrictive means of serving the governmental interest, but it should be narrowly tailored to serve the interest, should not burden the protected right more than is reasonably necessary to further the governmental interest, and should leave open ample alternative means of exercising the protected right.  (*Ibid.*)

Several California appellate courts, including our own court, have concluded that statutes restricting the carrying of concealed firearms pass constitutional muster after *Heller*.  (*People v. Yarbrough*, *supra*, 169 Cal.App.4th at p. 314, 86 Cal.Rptr.3d 674; *People v. Flores* (2008) 169 Cal.App.4th 568, 575, 86 Cal.Rptr.3d 804; *People v. Ellison*, *supra*, 196 Cal.App.4th at p. 1348, 128 Cal.Rptr.3d 245.)  In *Yarbrough*, the court reasoned: "Unlike possession of a gun for protection within a residence, carrying a concealed firearm prevents a recognized 'threat to public order,' ... A person who carries a concealed firearm on his person ... 'which permits him immediate access to the firearm but impedes others from detecting its presence, poses an "imminent threat to public safety...." ....' .... [¶] Rather than cast any doubt upon the continued constitutional validity of concealed weapons bans, the *Heller* opinion specifically expressed constitutional approval of the accepted statutory proscriptions against carrying concealed weapons." (*Yarbrough*, *supra*, 169 Cal.App.4th at p. 314, 86 Cal.Rptr.3d 674.)

We reach the same conclusion here.  The ban on carrying a concealed dirk or dagger serves the important governmental interest of allowing third parties to protect themselves from exposure to the risk of a surprise attack from a bearer of a weapon.  The risk of a surprise attack exists even if the weapon bearer originally intends to use the weapon only for legitimate self-defense.  The public safety risk arising from possession of a weapon (including a knife) even for "anticipatory self-defense" was explained in *Mack v. United States* (D.C.App.Ct.2010) 6 A.3d 1224: "When dangerous weapons are readily available, death or serious injury too often result.  One who carries a knife, a pistol, or an ice pick may think that he will use it only in lawful self-defense.  But threats, violence, and other unsettling events may occur without warning.  People who are startled or upset may overreact, lose their tempers, or make poor judgments under stress.  Even when they start out with good intentions, persons who carry items capable of inflicting death or great bodily injury may

use them in ways and in situations that are not justified—with grave results." (*Id.* at p. 1232.)

Further, an instrument qualifies as a dirk or dagger only if it is a knife or other instrument capable of ready use as a stabbing weapon that may inflict great bodily injury or death; hence, the statute is narrowly restricted to concealed stabbing instruments that pose a serious threat to physical safety. Further, the statute does not apply to the open carrying of a dirk or dagger, and it excludes from its coverage an openly-suspended sheathed knife, as well as nonswitchblade folding and pocketknives kept in a closed or unlocked position. Thus, the statute provides other means of carrying a dirk or dagger for self-defense. We conclude the statute does not run afoul of the Second Amendment because it is narrowly tailored to serve the important governmental interest of preventing exposure to the risk of surprise attacks and does not burden the right to bear arms in self-defense beyond what is reasonably necessary to serve that interest.

(Lodgment No. 15 at 9-13.)

The Court of Appeal went on to reject Petitioner's as applied challenge as follows:

We also reject Mitchell's claim that the statute is unconstitutional as applied to him. When considering a claim that a facially valid statute has been applied in a constitutionally impermissible manner, "the court evaluates the propriety of the application on a case-by-case basis to determine whether to relieve the defendant of the sanction." (*Tobe v. City of Santa Ana*, *supra*, 9 Cal.4th at p. 1084, 40 Cal.Rptr.2d 402, 892 P.2d 1145.) An as-applied challenge "contemplates analysis of the facts of a particular case ... to determine the circumstances in which the statute ... has been applied and to consider whether in those particular circumstances the application deprived the [defendant] of a protected right." (*Ibid.*) When reviewing an as-applied constitutional challenge on appeal, we defer to the trial court's findings on historical facts that are supported by substantial evidence, and then independently review the constitutionality of the statute under those facts. (See *Board of Administration v. Wilson* (1997) 52 Cal.App.4th 1109, 1127–1130, 61 Cal.Rptr.2d 207.)

Mitchell argues that he "posed no threat to anybody [who] did not attack him," and reiterates essentially the same assertions he made in his facial challenge. Regardless of Mitchell's claimed intent to use the weapon only defensively, as we have explained, the statute survives constitutional scrutiny because it is reasonably necessary to serve the important governmental interest of diminishing the risk of a surprise attack that accompanies concealed carrying of a dirk or dagger.

To support his claim of as-applied unconstitutionality, Mitchell contends that if he had carried the knife openly in a sheath rather than hidden under his sweatshirt, this would increase the danger to the public because the knife could be more easily grabbed by a third party. This contention fails to recognize that the concealment prohibition is designed to provide third parties the opportunity to avoid surprise attacks. Thus, by prohibiting concealment the statute advances the governmental purpose irrespective of the ease with which an unconcealed weapon can be accessed.

Mitchell also asserts that he "was an indigent man who was struggling for subsistence" and who could not financially afford a permissible self-defense

weapon. This issue concerns factual matters that were not presented to the trial court for resolution; thus, Mitchell may not prevail on this claim for the first time on appeal unless the matter can be resolved as a matter of law. (See *Charisma R. v. Kristina S.*, supra, *175* Cal.App.4th at pp. 384–385, 96 Cal.Rptr.3d 26.) He has cited no evidence showing as a matter of law that the permitted alternative means of carrying a knife (a sheathed knife or folding or pocket knife) are so cost-prohibitive as to unconstitutionally affect his right to bear arms for self-defense.

Mitchell does not assert that the statute was unconstitutionally applied to him based on his testimony that he had the knife with him for fishing. It is apparent from the record that the jury rejected this claim. The jury was given the standard CALCRIM instruction relating to innocent use, which stated that the jury should consider all the surrounding circumstances when deciding whether the defendant knew the object could be used as a stabbing weapon.[] Consistent with this instruction, in closing arguments the prosecutor did not suggest to the jury that Mitchell would be guilty even if he was merely carrying the knife for fishing; instead the prosecutor asserted that the fishing explanation "appeared to be something he just thought of this day" and noted there was "[n]o fishing pole, nothing like that." Thus, this is not a case involving a conviction based on an innocuous possession of a knife.

Mitchell's constitutional challenge to the statute fails.

(Lodgment No. 15 at 17-19.)

The Second Amendment provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. The United States Supreme Court has never held that a statute prohibiting carrying a concealed weapon violates the Second Amendment.

In *District of Columbia v. Heller*, 554 U.S. 570 (2008), the United States Supreme Court held that under the Second Amendment, individuals have a right to possess firearms in the home for self defense. In *McDonald v. City of Chicago*, 130 S.Ct. 3020 (2010) the Court held the Second Amendment right to keep and bear arms for the purpose of self defense applies to the states. In both opinions, the Supreme Court noted that self-defense is central to the Second Amendment right. *Heller*, 554 U.S. at 628; *McDonald*, 130 S.Ct. at 3036. However, neither opinion recognized a right to carry weapons outside the home, or to carry concealed weapons. In fact, the Court cautioned that the right to keep and bear arms is not without limits. In *Heller*, the Court stated "[l]ike most rights, the right secured by the Second Amendment is not unlimited. From Blackstone through the 19th-century cases, commentators and courts routinely explained that the right was not a right to keep and carry

1   any weapon whatsoever in any manner whatsoever and for whatever purpose.  For example,

2   the majority of the 19th-century courts to consider the question held that prohibitions on

3   carrying concealed weapons were lawful under the Second Amendment." *Heller*, 554 U.S.

4   at 625.  *See also* In *McDonald*, 130 S.Ct. at 3047 ("It is important to keep in mind that

5   *Heller*, while striking down a law that prohibited possession of handguns in the home,

6   recognized that the right to keep and bear arms is not 'a right to keep and carry any weapon

7   whatsoever in any manner whatsoever and for whatever purpose.'").

8        Although the Supreme Court has established that the Second Amendment guarantees

9   the right to possess a firearm for self defense within the home, the Court has not yet defined

10   the precise limits of the Second Amendment right.   Indeed, in *Heller*, the Court

11   acknowledged that it was leaving "many applications of the right to keep and bear arms in

12   doubt."   *Heller*, 554 U.S. at 635 ("since this case represents this Court's first in-depth

13   examination of the Second Amendment, one should not expect it to clarify the entire

14   field[.]").  Consequently, there is no clearly established federal law that a person has a right

15   under the Second Amendment to carry a concealed dirk or dagger for self defense.

16   Therefore, the Court of Appeal's rejection of Petitioner's claim was not contrary to, or an

17   unreasonable application of, clearly established federal law and habeas relief on this claim

18   must be denied.  *See Carey v. Musladin*, 549 U.S. 70, 77 (2006) (explaining that a state

19   court's decision cannot unreasonably apply clearly established federal law if the United

20   States Supreme Court has not clarified an issue); *Wright v. Van Patten*, 552 U.S. 120, 126

21   (2008) ("Because our cases give no clear answer to the question presented, let alone one in

22   [the petitioner's] favor, 'it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly

23   established Federal law.'").   *Brewer v. Hall*, 378 F.3d 952, 955 (9th Cir. 2004) ("If no

24   Supreme Court precedent creates clearly established federal law relating to the legal issue

25   the habeas petitioner raised in state court, the state court's decision cannot be contrary to or

26   an unreasonable application of clearly established federal law.").

27        Further, there is nothing to suggest that the Court of Appeal's decision was based on

28   an unreasonable application of *Heller*.  The Supreme Court has not clarified what standard

of review applies to Second Amendment claims.  *See e.g. Heller*, 554 U.S. at 628, n.27, 634; *Peruta v. County of San Diego*, 758 F.Supp.2d 1106 (S.D. Cal. 2010) (noting *Heller* declined to prescribe the appropriate level of scrutiny to apply to Second Amendment claims, and finding intermediate scrutiny is the appropriate standard).  The Court of Appeal determined that the appropriate standard of review was intermediate scrutiny.  (Lodgment No. 15 at 10.)  Under that standard, the Court of Appeal determined that § 12020 does not unreasonably burden the Second Amendment right to bear arms for self defense because the statute left open alternative means of carrying a knife for protection.  (*Id.* at 12-13.)  In light of the lack of controlling Supreme Court precedent on this issue, the Court finds the Court of Appeal's rejection of Petitioner's Second Amendment claim was not unreasonable.

To the extent Petitioner is arguing that the statute was unconstitutionally applied to him, the Court finds the Court of Appeal's rejection of this claim is not contrary to or an unreasonable application of federal law.  An as-applied challenge asks whether a facially valid statute has been applied in a constitutionally impermissible manner.  *Broadrick v. Oklahoma*, 413 U.S. 601, 615-616 (1973); *City of Cleburne, Tex. v. Cleburne Living Center*, 473 U.S. 432, 447 (1995).  As the Court of Appeal indicated, most of Petitioner's as-applied claims reiterated the claims he made in his facial challenge.  Because the Court of Appeal reasonably found the conviction statute was facially valid, Petitioner's as-applied challenges on the same grounds were also reasonably rejected.  As to Petitioner's claim of innocent possession, the Court of Appeal noted that the jury was instructed regarding innocent use.  (*See* Lodgment No. 15 at 19; Lodgment No. 1 at58.)  The jury rejected Petitioner's defense.  Therefore, the Court of Appeal reasonably concluded § 12020 was not unconstitutional as applied to Petitioner.

Accordingly, the Court RECOMMENDS that Petitioner's claim in ground one be DENIED.

/ / /

/ / /

/ / /

### D.    Claim Two: Petitioner's Sentence Violates the Eighth Amendment

In ground two, Petitioner contends that his sentence is unusually harsh and violates the Eighth Amendment because it exceeds the amount of prison time specified by §12020.[3] (ECF No. 13 at 7.) Respondent counters that this claim is not exhausted. Responded further argues that because the claim does not raise a colorable federal claim, it should be dismissed on the merits. (ECF No. 15 at 16-20.) For the reasons set forth below, the Court agrees with Respondent.

A federal court may not grant habeas relief unless the petitioner has exhausted all available state judicial remedies. 28 U.S.C. § 2254(b)(1)(A); *Rose v. Lundy*, 455 U.S. 509, 522 (1982). Exhaustion requires that a petitioner's claims be fairly presented to the state courts. *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (citing *Picard v. Connor*, 404 U.S. 270, 275 (1971). To meet the fair presentation requirement, the petitioner must describe in the state court proceedings both the operative facts *and* the federal legal theory on which his claim is based. *Id.*; *Hiivala v. Wood*, 195 F.3d 1098, 1106 (9th Cir. 1999) ("To 'fairly present' his federal claim to the state courts, [petitioner] had to alert the state courts to the fact that he was asserting a claim under the United States Constitution."). A petitioner alerts the state courts to the federal nature of his claim by making reference to provisions of the federal Constitution or by citing either federal or state case law that engages in a federal constitutional analysis. *Fields v. Washington*, 401 F.3d 1018, 1021 (9th Cir. 2005).

Respondent argues Petitioner's Eighth Amendment claim is unexhausted because it was never presented to the Court of Appeal or the California Supreme Court. In his Reply,

---

[3] In his Traverse, Petitioner also asks the Court to vacate the $1,000 restitution fine imposed by the trial court. (ECF No. 24 at 2.) To the extent Petitioner is challenging the restitution fine, the Court finds he has not raised a cognizable federal claim. In his direct appeal, Petitioner argued the trial court abused its discretion under California Penal Code §1202.4 by ordering a restitution fine greater than the $200 statutory minimum. (Lodgment No. 7 at 77-81.) The Court of Appeal rejected Petitioner's argument, finding "[t]here was no abuse of discretion." (Lodgment No. 15 at 29-33.) The trial court's decision to impose the $1,000 restitution fine entailed a limited exercise of the court's discretion permitted under section 1202.4, and does not implicate any federal constitutional right. Thus, it does not present a federal question cognizable on habeas review. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."). Moreover, Petitioner has not demonstrated that the Court of Appeal's decision is contrary to, or an unreasonable application of, clearly established federal law.

Petitioner states that he did present the issue to the state courts. (ECF No. 24 at 2.) The Court has reviewed the record, and finds Respondent is correct.

In his appeal to the Court of Appeal, Petitoner argued that the punishment for violating California Penal Code § 12020 is too severe. However, this argument was only asserted on the context of Petitioner's Second Amendment claim challenging the validity of §12020. (*See* Lodgment No. 7 at 8, 36-38.) Specifically, Petitioner argued the penalty under §12020 unconstitutionally burdens a citizen's Second Amendment rights. (*Id.*) Petitioner also argued on appeal that his sentence should be vacated because he was not properly advised of his rights regarding his prior strike convictions. (*Id.* at 67-76.) However, this claim was only raised under the Fifth, Sixth, and Fourteenth Amendments. (*Id.* at 67.) Petitioner did not cite to the Eighth Amendment, or argue that his sentence was cruel and unusual. Indeed, the phrase "cruel and unusual" does not appear anywhere in his appellate briefs or Petition for Review. (*See* Lodgments No. 7, 9, and 16.) Further, Petitioner did not cite to any federal authority or case law discussing the Eighth Amendment in his state court pleadings. Nor did he cite any state cases that engaged in a federal constitutional analysis of the Eighth Amendment. Therefore, Petitioner did not fairly present his Eighth Amendment claim to the state court. *Fields*, 401 F.3d at 1021; *Baldwin v. Reese*, 541 U.S. 27, 33 (2004) (finding federal claim was not fairly presented to state court where the petition provided "no citation of any case that might have alerted the court to the alleged federal nature of the claim."); *Gatlin v. Madding*, 189 F.3d 882, 888 (9th Cir. 1999) (finding petitioner failed to fairly present federal claim because "[w]hile [petitioner] adequately described the factual basis for his claim, he nowhere identified the federal legal basis for his claim."). Accordingly, the Court finds Petitioner's Eighth Amendment claim is unexhausted.

Although Petitioner's claim is unexhausted, the Court may nevertheless deny the claim on the merits "when it is perfectly clear that the applicant does not raise even a colorable federal claim." *Cassett v. Stewart*, 406 F.3d 614, 623-24 (9th Cir. 2005). *See also* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts

1  of the State.").

2      Here, Petitioner claims that his sentence is unconstitutional because it exceeds the

3  amount of time authorized by § 12020.  The Court notes that Petitioner's five-year sentence

4  was based on California's recidivist statutes.  Specifically, Petitioner was sentenced to the

5  middle term of two years for his violation of §12020.  That term was doubled because

6  Petitioner had previously been convicted of an aggravated assault.  An additional year was

7  added because Petitioner had previously served a prison term.  (*See* Lodgment No. 1 at 96.)

8      The clearly established United States Supreme Court law regarding the Eighth

9  Amendment and proportionality in sentencing is governed by *Rummel v. Estelle*, 445 U.S.

10  263 (1980), *Solem v. Helm*, 463 U.S. 277 (1983), and *Harmelin v. Michigan*, 501 U.S. 957

11  (1991).  In *Rummel*, the Court recognized the Eighth Amendment prohibits the imposition

12  of a sentence that is grossly disproportionate to the severity of the crime but warned that a

13  finding of disproportionality would be extremely rare outside the capital context and stated

14  "the length of the sentence actually imposed is purely a matter of legislative prerogative."

15  *Rummel*, 445 U.S. at 271-274.  The Court in *Solem* shifted from *Rummel*'s absolute approval

16  of legislative penology, conceding that legislatures were entitled to substantial deference in

17  their determination of appropriate punishments, but also noting no penalty was per se

18  constitutional under the Eighth Amendment.  *Solem*, 463 U.S. at 290.  The Court further

19  suggested three factors should guide an Eighth Amendment proportionality analysis: "(i) the

20  gravity of the offense and the harshness of the penalty; (ii) the sentences imposed on other

21  criminals in the same jurisdiction; and (iii) the sentences imposed for commission of the

22  same crime in other jurisdictions."  *Id.* at 292.  The Supreme Court revisited the issue of

23  proportionality in sentencing when it decided *Harmelin*.  From *Harmelin*, a decision in

24  which there was no majority opinion, Justice Kennedy's concurrence modified the *Solem*

25  factors.  Under *Harmelin*, a threshold determination is made by comparing "the crime

26  committed and the sentence imposed."  *Harmelin*, 501 U.S. at 1005.  If a petitioner's

27  sentence does not "lead[] to an inference of gross disproportionality," a comparative

28  intrajurisdictional or interjurisdictional analysis under *Solem* is unnecessary.  *Id.*; *Ewing v.*

1  *California*, 538 U.S. 11, 36-37 (2003) (Breyer, J., dissenting).  *See also United States v.*
2  *Bland*, 961 F.2d 123 (9th Cir. 1992) (adopted Justice Kennedy's revised test as the "rule of
3  *Harmelin*").

4          In *Ewing v. California*, the Supreme Court analyzed the proportionality of a sentence
5  under California's three strikes law by looking at not only "the current felony, but also [the
6  defendant's] long history of felony recidivism." *Ewing*, 538 U.S. at 29.  In *Ewing*, the
7  Supreme Court found the California recidivist sentencing statute to be constitutional. *Id.* at
8  28.  The Court further found that the defendant's 25 years to life sentence, imposed under
9  California's three strikes law, for the grand theft of $1,200 worth of golf clubs did not raise
10 an inference of gross disproportionality. *Id.* at 29-30.  The Court stated the sentence was
11 justified by California's interest in incapacitating and deterring recidivist felons, was
12 supported by the defendant's criminal record, and was entitled to deference. *Id.*  Therefore,
13 the Court held the sentence did not violate the Eighth Amendment. *Id.*  In the companion
14 case to *Ewing*, *Lockyer v. Andrade*, 538 U.S. 63 (2003), the Supreme Court upheld the denial
15 of habeas relief for a petitioner sentenced to 50 years to life under California's three strikes
16 law.  There, the petitioner's third strike was for stealing approximately $150 in video tapes.
17 *Id.* at 70.  The Court held it was not objectively unreasonable for the state court to affirm the
18 petitioner's sentence, in light of his criminal history.  *Id.* at 77.

19         Here, the Court finds no inference of gross disproportionality arises from the
20 comparison of Petitioner's sentence with the severity of his crime. *Ewing*, 538 U.S. at 30;
21 *Andrade*, 538 U.S. at 77.  Prior to committing the instant offense, Petitioner had been
22 convicted of three other felonies, including assault with a deadly weapon.  (Lodgment No.
23 1 at 2, 81-88.)  In light of Petitioner's criminal record, and considering the deference given
24 to state recidivist statutes, the Court finds Petitioner has failed to raise an inference of gross
25 disproportionality.  Without reaching a threshold determination of gross disproportionality,
26 it is unnecessary to complete the intrajurisdictional and interjurisdictional comparisons.
27 *Harmelin*, 501 U.S. at 1005; *Ewing*, 538 U.S. at 36-36, (Breyer, J., dissenting).  Therefore,
28 Petitioner fails to show the state court judgment was contrary to, or was an unreasonable

application of, clearly established federal law.

Accordingly, the Court RECOMMENDS the Petition be DENIED as to Petitioner's second ground for relief.

### E.   Claim Three: The Jury Was Improperly Instructed

In ground three, Petitoner argues his due process rights were violated because the jury was incorrectly instructed on the elements of §12020.  (ECF No. 13 at 8.)  Specifically, Petitioner claims the trial court erred by failing to instruct the jury that intent to conceal was an element of the offense.  Respondent counters that the state courts reasonably rejected Petitioner's jury instruction claim.  (ECF No. 15 at 18-21.)  For the reasons set forth below, the Court agrees with Respondent.

Petitioner's jury was instructed on the elements of §12020 as follows:

> The defendant is charged in Count One with unlawfully carrying a concealed dirk or dagger.  To prove that the defendant is guilty of this crime, the People must prove that:
>
> 1. The defendant carried on his person a dirk or dagger;
> 2. The defendant knew that he was carrying it;
> 3. It was substantially concealed on the defendant's person; AND
> 4. The defendant knew that it could readily be used as a stabbing weapon.
>
> The people do not have to prove that the defendant used or intended to use the alleged dirk or dagger as a weapon.

(Lodgment No. 1 at 58.)

Petitioner's jury was also given the following instruction on general intent:

> The crime charged in this case requires proof of the union, or joint operation, of act and wrongful intent.
>
> For you to find a person guilty of the crime Carrying a Concealed Dirk or Dagger as charged in Count I, that person must not only commit the prohibited act, but must do so with wrongful intent.  A person acts with wrongful intent when he or she intentionally does a prohibited act, however, it is not required that he or she intend to break the law.  The act required is explained in the instruction for that crime.

(Lodgment No. 1 at 57.)

Petitioner argues the jury should have also been instructed that he must intend to conceal the dirk or dagger in order to violate § 12020.  Petitioner presented this claim to the Court of Appeal.  (Lodgment No. 7 at 54-66.)  However, he failed to raise it before the

California Supreme Court.  (*See* Lodgment No. 16.)  Therefore, it is not exhausted.  *Roman v. Estelle*, 917 F.2d 1505, 1506 (9th Cir. 1990) (stating that to satisfy the exhaustion requirement, claims must be included in the petition for review to the California Supreme Court).  Nevertheless, the Court finds it appropriate to address the claim on the merits because "it is perfectly clear that the applicant does not raise even a colorable federal claim." *Cassett v. Stewart*, 406 F.3d 614, 623-24 (9th Cir. 2005).  *See also* 28 U.S.C. § 2254(b)(2).

The Court of Appeal rejected Petitioner's claim as follows:

> [Petitioner] asserts the trial court erred by failing to sua sponte instruct the jury that intent to conceal is also an element of the concealed dirk or dagger offense.  Although section 12020 does not contain any language stating that intent to conceal is an element of the offense, [Petitioner] argues that the knowledge element defined by the California Supreme Court in *Rubalcava, supra* 23 Cal.4th 322 includes the intent to conceal.  He asserts that instruction on intent to conceal was crucial to his case because he testified he was not intentionally trying to hide the knife.  He also points that "[i]nadvertent concealment of a substantial part of a carried knife is always a risk during routine use."

> Intent to conceal can be defined as the defendant's specific, subjective intent to prevent someone from seeing the knife, or as the defendant's general intent to purposefully commit the act of placing the knife in a concealed location.  As we shall explain, to the extent [Petitioner] is asserting that specific intent to conceal the knife from onlookers is an element of the offense, his contention is unavailing.  To the extent he is asserting that intentional, rather than inadvertent, commission of the act of concealment is an element of the offense, we agree but find there was no instructional error as to this requirement.

> In *Rubalcava* the court held the concealed dirk or dagger offense was a general intent crime, and the statute did not require that the defendant intend to use the concealed instrument as a stabbing instrument.  (*Rubalcava, supra*, 23 Cal.4th at pp. 330-332.)  However, *Rubalcava* construed the offense as requiring a knowledge element, stating the defendant must "knowingly and intentionally carry concealed upon his or her person an instrument 'that is capable of ready use as a stabbing weapon.'"  (*Id.* at pp. 331-332.)  The *Rubalcava* court cited two instances, supported by examples, when the requisite knowledge element would be absent: (1) a defendant who does not know that he is carrying the weapon (for example, if someone slipped a knife into a defendant's pocket without the defendant's knowledge); or (2) a defendant who does not know that the concealed instrument may be used as a stabbing weapon (for example, if someone gave a defendant a fixed-blade knife wrapped in a paper towel, but told the defendant the knife has a folding blade that cannot lock).  (*Id.* at p. 332 & fn. 6.)

> There is nothing in *Rubalcava* that suggests the knowledge element incorporates a specific intent to conceal the weapon from other persons.  However, a requirement that the defendant intentionally commit the act of concealment is encompassed within the principle of general intent.  As the jury was instructed, general intent means that the "person must not only commit the

prohibited act, but must do so with wrongful intent. A person acts with wrongful intent when he or she *intentionally* does a prohibited act. . . ." (Italics added; see CALCRIM No. 250.)  Here, the prohibited act is the concealed carrying of a dirk or dagger; thus, the defendant must intentionally commit the act of concealment.  As a corollary to this principle, a defendant may present an accident defense based on a claim that he or she acted accidentally rather than with the intent required for the crime.  (§26; *People v. Anderson* (2011) 51 Cal.4th 989, 996; see, e.g., *People v. Jeffers* (1996) 41 Cal.App.4th 917, 922 ["a felon who acquires possession of a firearm through misfortune or accident, but who has no intent to exercise control or to have custody, commits the prohibited act without the required wrongful intent"].)  The trial court is generally not required to instruct sua sponte on accident given that the mental state instructions adequately convey to the jury the required mental elements. (*People v. Anderson*, *supra*, 51 Cal.4th at pp. 992; see *People v. Padilla*, *supra*, 98 Cal.App.4th at pp. 134-136 [instruction that defendant must act intentionally apprised jury of defense based on accidental carrying of concealed firearm in car].)

Allowing a defendant to avoid culpability based on an accidental/unintentional concealment does not mean the prosecution has the burden to prove an additional element of specific intent to conceal that is distinct from the concept of general intent. There is nothing in the statute or *Rubalcava* that supports inclusion of a specific intent to conceal element based on the defendant's subjective intent to hide the object from onlookers.[]

The offense is established if the prosecution proves that the defendant intentionally and knowingly committed the proscribed act of carrying a concealed dirk or dagger, and no further proof concerning intent is required. Because the offense does not include a requirement of specific intent to conceal the instrument from other persons, the trial court had no duty to instruct on this element.  (See *Rubalcava*, *supra*, 23 Cal.4th at pp. 333-334.) Further, the trial court properly instructed the jury on general intent, which encompassed the requirement of an intentional, not accidental, act of concealing the weapon.

(Lodgment No. 15 at 19-22.)

Challenges to jury instructions normally present issues of state law involving no question cognizable on federal habeas review.  *Estelle v. McGuire*, 502 U.S. 62, 71-73 (1991).  However, an erroneous jury instruction can sometimes be found unconstitutional in and of itself.  For example, a jury instruction will violate the due process if it omits an element of the offense. *In re Winship*, 397 U.S. 358, 364 (1970) ("[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged."); *Sandstrom v. Montana*, 442 U.S. 510, 521 (1979); *Osborne v. Ohio*, 495 U.S. 103, 122-24 (1990). Therefore, on federal habeas review of instructional error by a state court, "[t]he only question for us is 'whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process.'"  *Estelle*, 502 U.S. at 72 quoting *Cupp v.*

*Naughten*, 414 U.S. 141, 147 (1973).  S*ee also Mejia v. Garcia*, 534 F.3d 1036, 1045 (9th Cir. 2008).  Reviewing courts must consider a challenged jury instruction "in the context of the instructions as a whole and the trial record," and may not judge the instruction "in artificial isolation." *Estelle*, 502 U.S. at 72. *See also Henderson v. Kibbe*, 431 U.S. 145, 154 (1977) ("The burden of demonstrating that an erroneous instruction was so prejudicial that it will support a collateral attack on the constitutional validity of a state court's judgment is even greater than the showing required to establish plain error on direct appeal"); *Cupp*, 414 U.S. at 146-47.

Here, the Court of Appeal found neither §12020, nor the California Supreme Court's opinion in *People v. Rubalcava*, 23 Cal.4th 322 (2000), provide that specific intent to conceal the dirk or dagger is an element of the offense.  (Lodgment No.15 at 22.)  Federal habeas courts are bound by a state courts' interpretation of state law, and may not revisit state court determinations on state law issues such as the elements and scope of crimes codified under state law. *Bradshaw*, 546 U.S. at 76 (2005); *Estelle*, 502 U.S. at 71-72 (the fact that a jury instruction "was allegedly incorrect under state law is not a basis for habeas relief").  Petitioner's jury was instructed on each element of §12020, as that crime is defined by the California courts.  Therefore, the jury instruction did not omit an element of the offense, and thus, did not violate Petitioner's due process rights.  Moreover, Petitioner identifies no specific constitutional deficiency in the jury instructions recognized as such by any controlling United States Supreme Court authority.

Accordingly, the Court RECOMMENDS the Petition be DENIED as to Petitioner's third ground for relief.

/ / /

/ / /

/ / /

## F. Claim Four: Petitioner Was Not Properly Informed About His Rights Relating to His Prior Convictions

In ground four, Petitioner agues his due process rights were violated because he was

1    not properly advised of his rights relating to his prior convictions.  (ECF No. 13 at 14.)

2    Specifically, Petitioner claims the trial court did not adequately advise him of his rights to

3    a jury trial, to remain silent, and to confront and cross-examine witnesses.  Respondent

4    counters that this claim is not cognizable on federal habeas review because the right to a jury

5    trial on prior convictions is a matter of state law, and alternatively the claim was reasonably

6    rejected by the Court of Appeal.  (ECF No. 5 at 25-28.)  As set forth below, the Court agrees

7    with Respondent.

8            During voir dire, Petitioner waived his right to a jury trial on his priors.  The trial court

9    discussed the adjudication of Petitioner's prior convictions and strike allegations as follows:

10

11    The Court:              That raises another issue probably.  You have a right to a
                             jury trial on the issue of your prior convictions.  You can
12                           waive that right.  Most people waive that right, but it's up
                             to you.  You just have a bench trial.  How it works on the
13                           prior convictions is the prosecution simply brings them in,
                             brings in the dockets, and he establishes that, in fact, these
14                           convictions are you, okay?  You can have a jury prove that,
                             or you can have a judge look at the evidence and make a
15                           ruling as to it.  It's a very short --
      The Defendant:         As to whether they are going to be applied to the case?
16    . . .
      The Court:             For the purposes of the sentencing.
17    The Defendant:         I'd like a hearing on that.
      The Court:             In front of the judge or jury?
18    The Defendant:         In front of the judge.
      The Court:             Okay.  Waive the jury on the issue of priors.
19    (Lodgment No. 11 at 1-2.)

20           The following day, Petitioner waived his rights to remain silent, to an attorney, and

21    to confront and cross-examine witnesses.  While the jury was deliberating, the following

22    conversation occurred:

23    The Court:              In the event the verdict comes back guilty, these prior
                             convictions will be used as the component portion of your
24                           sentencing, Mr.Mitchell.  The first prison priors, which is
                             the same as your probation on that prior, Penal Code
25                           Section 484/666.  Date of conviction was December 16,
                             2004, SCS189716 San Diego Superior Court.  That was a
26                           petty theft-related conviction.  Do you want to admit that
                             you sustained and suffered that prior conviction on 12-16-
27                           04, in the San Diego Superior Court?
      Mr. Minahan:           Your honor, if I could just in an abundance of caution, if he
28                           could just be advised that he does have the right to remain
                             silent.  He does have the right to any attorney, and he does

| | | |
|---|---|---|
| 1 | | have the right to confront and cross-examine witnesses if he wants to. |
| 2 | The Court: | All right.   Do you want to give up those rights, Mr. Mitchell? |
| 3 | Mr. Minahan: | Just so the record is clear, he's previously waived his right to a jury trial earlier in the proceeding. |
| 4 | The Court: | Yes. |
| | The Defendant: | We just had jury trial, right? |
| 5 | The Court: | Yes. But this is a different issue.   This is on your prior convictions. |
| 6 | The Defendant: | Do I want to admit that I sustained those convictions? |
| | The Court: | Right.   The first one is 2004, SCS189716, charge is petty theft 484. |
| 7 | The Defendant: | Yes. |

(Lodgment No. 6 at 117-118.)

Petitioner went on to admit his three prior convictions.  (*Id.* at 118-119.)  Petitioner now argues the advisement of his rights was not sufficient.  Petitioner presented this claim to the Court of Appeal, but failed to raise it before the California Supreme Court.  (*See* Lodgment No. 7 at 67-76; Lodgment No. 16.)  Therefore, it is not exhausted.  *Roman v. Estelle*, 917 F.2d at 1506.  Nevertheless, the Court will address the claim on the merits because "it is perfectly clear that the applicant does not raise even a colorable federal claim." *Cassett v. Stewart*, 406 F.3d 614, 623-24 (9th Cir. 2005).  *See also* 28 U.S.C. § 2254(b)(2).

The Court of Appeal rejected Petitioner's claim as follows:

> Before a trial court accepts a defendant's admission to a prior conviction allegation, the court must enumerate the three rights the defendant is waiving (i.e., to a jury trial, to remain silent, and to confront witnesses), and must obtain waivers of these rights from the defendant. (*People v. Mosby* (2004) 33 Cal.4th 353, 356, 359-360 (*Mosby*).) If an express waiver of these rights is not secured from the defendant, reversal is required unless the record as a whole shows the admission was voluntary and intelligent under the totality of circumstances. (*Id.* at pp.360-361.)  The question is whether the defendant's admission was intelligent and voluntary "because it was given with an understanding of the rights waived." (*Id.* at p. 361.)
>
> In *Mosby*, the California Supreme Court found the defendant's admission of his priors was intelligent and voluntary under the totality of the circumstances, notwithstanding the failure to advise and obtain a waiver on the rights to silence and confrontation of witnesses. (*Mosby*, *supra*, 33 Cal.4th at pp.356, 360, 364-365.)  The lynchpin of *Mosby's* conclusion was that the defendant was expressly advised about, and had expressly waived, his right to a jury or court trial on the priors. (*Ibid.*)  The *Mosby* court reasoned that it was apparent the defendant knew about and intended to waive the two rights attendant to a trial (i.e, silence and witness confrontation) because he had just participated in a trial on the substantive offenses where those very same rights were operative. (*Id.* at pp. 364-365.)[11]

[11] *Mosby* distinguished cases where there was absolutely no advisement and waiver of the jury or court trial right, or where the trial court's reference to the trial right was fleeting and without response from the defendant so that the circumstances in effect equated with a complete lack of advisement and waiver. (*Mosby*, *supra*, 33 Cal.4th at pp. 361-362.)

Here, as in *Mosby*, the record shows an effective advisement and waiver of the right to a jury or court trial on the priors. [Petitioner] was told he could have his priors resolved before a jury or a judge, and [Petitioner] said he wanted a hearing before a judge. Thus, [Petitioner] expressly waived his jury trial right and selected a court trial. The record shows that the following day he also elected to waive the court trial and admit the priors. That is, when the court and parties were discussing the priors and the fact that he had already waived his jury trial right, [Petitioner] himself asked, "Do I want to admit that I sustained those convictions?" [Petitioner's] statement in this regard reflects that he understood he had *a choice* to admit or not admit the priors. [Petitioner's] subsequent statements that he wanted to make the admissions shows that he elected to waive the court trial.

[Petitioner] argues the trial court's advisement of the jury or court trial right was confusing, and he appears to have thought the hearing would merely be a sentencing hearing rather than an opportunity to challenge the truth of the prior conviction allegations. The record does not support this contention. The trial court told [Petitioner] the prosecution had to prove [Petitioner's] identity as the defendant in the priors; thus [Petitioner] knew he could challenge whether he had incurred them. (See fn. 9, *ante*.) Further, when taking his admissions, the court asked [Petitioner] if he *wanted* to admit them and he said yes. This advisement shows [Petitioner] knew he had a choice to admit the priors or to challenge their truth by declining to admit them and requiring that the prosecution prove them.

As to [Petitioner's] waiver of the attendant trial rights (the rights to silence and witness confrontation), we are satisfied [Petitioner] understood he had these rights and he was giving them up by opting to admit the allegations rather than have the court decide them. Although [Petitioner] did not provide an explicit waiver of the silence and confrontation rights, they were expressly delineated by the prosecutor, followed by the court asking if [Petitioner] wanted to give up those rights and [Petitioner's] response that he wanted to admit the allegations. If [Petitioner] had not wanted to give up the trial rights of which he was just advised, he would not have told the court he wanted to admit the priors. Additionally, [Petitioner's] criminal history reflects he had previously pled guilty in other cases, during which he would have been advised of, and waived, the silence and confrontation rights.

Based on the totality of the circumstances, we conclude [Petitioner's] admissions of his prior were knowing and voluntary.

(Lodgment No. 15 at 25-27.)

The right to a jury trial on prior conviction allegations does not derive from the United States Constitution. According to the United States Supreme Court, prior convictions may be used to increase the penalty for a crime without a right to a jury trial. *See Apprendi v.*

22

*New Jersey*, 530 U.S. 466, 490 (2000) ("Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.").  Instead,  the right to a jury trial on prior convictions is supplied by California Penal Code §1025(b).

Under California law, admissions of prior convictions which subject a defendant to an enhanced sentence are the "functional equivalent" of a guilty plea. *Wright v. Craven*, 461 F.2d 1109 (9th Cir. 1972); *Adams v. Peterson*, 968 F.2d 835, 841 n.4 (9th Cir. 1992).  The Supreme Court has held that for a guilty plea to be valid, the defendant must voluntarily waive his rights against self incrimination, to a trial by jury, and to confront his accusers. *Boykin v. Alabama*, 395 U.S. 238, 242-43 (1969).  A guilty plea must not only be voluntary but "must be [a] knowing, intelligent act[] done with sufficient awareness of the relevant circumstances and likely consequences." *Brady v. United States*, 397 U.S. 742, 748 (1970). However, the Supreme Court has not yet determined whether *Boykin* and *Brady* apply to admissions of prior convictions.  Indeed, it appears the circuits are split on the issue. *Compare Cox v. Hutto*, 589 F.2d 394, 396 (8th Cir. 1979) (finding admissions to prior convictions are the functional equivalent of a guilty plea); *Virgin Islands v. George*, 741 F.2d 643, 648-49 (3d Cir. 1984) (same) *with Johnson v. Cowley*, 40 F.3d 341, 346 (10th Cir. 1994) (stating "we cannot conclude a stipulation to the fact of a prior valid conviction in an enhancement proceeding is the functional equivalent of a guilty plea"); *Joseph v. Butler*, 838 F.2d 786, 790-91 (5th Cir. 1988) (same); *Dombrowski v. Mingo*, 543 F.3d 1270, 1276 (11th Cir. 2008) (same).  Consequently, there is no clearly established federal law that requires trial courts to advise a defendant of his rights to jury trial, to remain silent, and to confront witnesses on the issue of prior convictions.  Accordingly, the Court of Appeal's decision is not contrary to clearly established federal law. *Carey*, 549 U.S. at 77; *Wright*, 552 U.S. at 126.

Even assuming that *Boykin* and *Brady* do apply, the Court finds that the Court of Appeal's decision was not objectively unreasonable.  The record indicates that Petitioner was informed of his right to a jury trial on his prior convictions, and he elected to waive that

right. (Lodgment No. 11 at 1-2.)  The record also indicates that Petitioner was informed of his rights to remain silent and to confront witnesses.  Petitioner chose to give up those rights and admit his prior convictions.  (Lodgment No. 6 at 117-118.)  As the Court of Appeal noted, Petitioner had experience with the criminal justice system, and therefore would have previously been advised of, and waived his silence and confrontation rights.  *See Park v. Raley*, 506 U.S. 20, 37 (1992) ("A defendant's prior experience with the criminal justice system [is] relevant to the question of whether he knowingly waived his constitutional rights."). Therefore, under the totality of the circumstances, the Court finds the Court of Appeal reasonably determined that Petitioner's waiver of his rights was voluntary and intelligent.

Accordingly, the Court RECOMMENDS that Petitioner's claim in ground four be DENIED.

## III.   CONCLUSION AND RECOMMENDATION

The Court submits this Report and Recommendation to United States District Judge William Q. Hayes under 28 U.S.C. § 636(b)(1) and Local Civil Rule 72.1(d) of the United States District Court for the Southern District of California.  For all the foregoing reasons, **IT IS HEREBY RECOMMENDED** that the habeas Petition be **DENIED** in its entirety on the ground the Petitioner's custody violates no federal right.

**IT IS FURTHER RECOMMENDED** the Court issue an Order (1) approving and adopting this Report and Recommendation and (2) directing that judgment be entered denying the Petition.

**IT IS HEREBY ORDERED** no later than **March 3, 2014**  any party to this action may file written objections with the Court and serve a copy on all parties.  The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** any Reply to the Objections shall be filed with the Court and served on all parties no later than ten (10) days from service of Petitioner's filed Objections.  The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's Order.  *See Turner v.*

*Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991).

**IT IS SO ORDERED.**

DATED:  February 3, 2014

DAVID H. BARTICK
United States Magistrate Judge